Capital Refrigeration, Inc. v. Commissioner.
Capital Refrigeration, Inc. v. Commissioner
Docket No. 5168-69.
United States Tax Court
T.C. Memo 1972-107; 1972 Tax Ct. Memo LEXIS 152; 31 T.C.M. (CCH) 428; T.C.M. (RIA) 72107; May 8, 1972, Filed. Arthur L. Berger, 100 Pine St., Harrisburg, Pa., for the petitioner. Mary Ann Hagan, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioner's Federal income taxes for its taxable years ended October 31, 1964, October 31, 1965, and October 31, 1966, as follows: Taxable year
ended October 31
Deficiency
1964
$4,348.35
1965
6,186.21
1966
4,683.90
The only issue for decision is whether respondent properly disallowed a portion of the amount of $19,572 deducted by petitioner as rental paid to a related party for each of the years in issue because of this amount being in excess *153 of the fair rental value of the premises or in the alternative in excess of a reasonable allowance for personal services of petitioner's officers. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner is a corporation organized under the laws of the Commonwealth of Pennsylvania on December 27, 1961. Its principal place of business at the date of the filing of the petition in this case was in Harrisburg, Pennsylvania. Petitioner, an accrual basis taxpayer, filed its Federal income tax returns for the fiscal years ending October 31, 1964, October 31, 1965, and October 31, 1966, with the district director of internal revenue at Philadelphia, Pennsylvania. All of the outstanding and issued stock of petitioner at all times material to this case was owned by either Glenn C. Hughes or his wife, Rosemary S. Hughes. Glenn C. Hughes was also president and treasurer of petitioner and Rosemary S. Hughes was vice president and secretary. Glenn C. Hughes received a salary of $20,000 per year and Rosemary S. Hughes received a salary of $10,000 per year from petitioner for each of the years here in issue. During all the years here in issue petitioner *154 conducted its business in property located at 801 South Tenth Street in Harrisburg, Pennsylvania. Glenn and Rosemary Hughes acquired the land at 801 South Tenth Street in Harrisburg, Pennsylvania in January 1961. In April 1965 the property was transferred to Glenn C. Hughes and on May 1, 1965, Glenn C. Hughes transferred the property to the Harrisburg National Bank and Trust Co. (now Commonwealth National Bank) in trust for the benefit or Rosemary S. Hughes. Ownership of this property continued in the trust for the remainder of the years at issue in this case. The business of petitioner for all the years before the Court was manufacturing commercial freezer and refrigeration units, primarily for the food industry. From 1961 to the latter part of 1962, Glenn C. Hughes constructed with the aid of friends and day laborers, a building on the property at 801 South Tenth Street to house petitioner corporation. The construction cost of the building excluding any amount representing Hughes's work was 429 approximately $48,000. Hughes had an appraisal of the property made by a real estate company which determined the value of the land and the building to be approximately $100,000. This *155 building was the subject of a lease dated December 12, 1962, stated to be between Glenn C. Hughes and Rosemary S. Hughes, lessors, and petitioner corporation, lessee, but signed only as follows: s/G. C. Hughes, Pres. CAPITAL REFRIGERATION, INC. The lease instrument, a printed form, provides that the lessee shall pay the lessors rent of $19,500 per year for a term of 5 years beginning November 1, 1962, and ending October 31, 1967. Typed in is the statement, "Party of the first part [lessors] to pay the taxes, insurance, water, and maintenance. Electric and Fuel to be paid by tenant." The usual printed clauses found on such form leases were present on this lease including, among others: Said Lessee shall not carry on any unlawful or immoral business in or about the demised premises, and shall not carry on any business which will endanger the building from fire or cause a forfeiture of any fire insurance that the Lessor has or may hereafter have on said building. * * * The Lessee agrees to keep the premises in a good condition of repair. All refuse of any kind shall be removed from the premises at the cost of the Lessee at least once a week or oftener, if need be. All *156 snow shall be cleaned off from the sidewalks before it shall have frozen and become hardened. Should the Lessee fail to comply with the provisions of this clause of the lease, the Lessor may enter the premises and make said repairs or remove said refuse and do all other things as herein provided to be done by the Lessee at the expense of the Lessee, and said expense thus incurred may also be collected as additional rent under the lease. * * * And further, it is agreed and understood that the Lessor, his heirs, or assingns, may enter the premises hereby leased at any time during the term, either in the presence or absence of the said Lessee for the purpose of ascertaining whether the said premises are kept in good order and repair during business hours. Further, that the Lessor reserves the right to display a "for rent or sale" card upon the said premises, and to show same to prospective tenants or buyers. The building housing petitioner corporation at 801 South Tenth Street in Harrisburg is a one story masonry structure of above average quality containing 11,015 square feet. The structure is "L" shaped and was erected in two sections. The office area consists of 2,040 square feet *157 and contains a reception area or salesroom and three offices. The offices are well appointed and the entire office area is centrally air conditioned. The balance of the space, 8,975 square feet is devoted to the fabrication of walk-in freezers and is partitioned into sections by cement block walls. Although the building was constructed with a view to housing petitioner's particular operations, it is of a type that could be used for other manufacturing operations. It has an adequate loading dock and is arranged in such a manner as to be adaptable to assembly line operations other than the manufacture of freezer and refrigeration units. The building is located under Interstate highway 83 and a truck could drive from petitioner's loading dock onto the interstate in less than five minutes. The property is located in a "slum" neighborhood. However, Hughes considers the location to be advantageous for petitioner's business operations since it enables petitioner to hire workers who have no means of traveling to better paying jobs in the Harrisburg suburbs. The location, however, made the building more subject to possible vandalism than a building located in a suburban area. Neither petitioner *158 nor the Hugheses carried any fire insurance on the property during the years in issue. Glenn Hughes received estimates of the cost of such insurance which he considered prohibitive. However, he also considered the operations conducted in manufacturing walk-in freezers to be such as to create a fire hazard. Each evening after the employees of petitioner corporation had left work, Hughes would return to the plant and would thoroughly sweep the plant out, removing refuse and sawdust. He would also, in the summer, mow the grass around the plant and in the winter shovel snow. Sometimes while he was at the plant in the evening, Hughes would also design new machines or do other engineering work. Hughes would usually leave the plant from 8 to 10 or 11 o'clock and would return to the plant around midnight to insure that vandals would cause no damage to the building. On some occasions when Hughes was at the plant in the evening, a factory 430 representative purchasing a freezer unit for a customer would call on him and he would work out the details or the design of the unit needed by his customer. Hughes considered himself to be "on call" at all times in the event an emergency arose in *159 connection with petitioner's plant. Hughes estimated that if petitioner had paid a hired hourly worker to sweep out the plant, mow the lawn, shovel the snow and do general janitorial work and had paid a watchman to guard the plant when petitioner was not operating, the total yearly cost would have been approximately $7,500. Petitioner on its income tax returns for the taxable years ended October 31, 1964 and October 31, 1966, deducted $356.60 and $440.58, respectively, for "Building Cleaning & Maint." Adjacent to the property at 801 South Tenth Street are some vacant lots used by petitioner's employees for parking. The Hugheses acquired ownership of these lots at various times, one as late as 1971. There is adequate on-street parking in the vicinity of the plant for the number of employees who worked in the area during the years in issue. Petitioner did not rent the adjacent vacant lots and claimed no deduction for rent for the years in issue other than for the property at 801 South Tenth Street. The Silver Creek Contracting Co., a manufacturer of wood products, leased a manufacturing facility which included some office space in Harrisburg in 1965 at $1.35 per square foot and *160 in 1967 at $1.50 per square foot. The building was larger than the building used by petitioner and was located in a different area of Harrisburg. Warehouse space in Harrisburg leased at between $.70 and $.85 per square foot in 1965 and between $.85 and $1.00 per square foot in 1967. Generally in the Harrisburg area during the years 1964 through 1966, manufacturing space, including a small amount of office space, was valued for rental at from 35 to 50 cents a square foot more than warehouse space because of the harder use given to a building in which manufacturing operations are conducted. Generally janitorial services are not furnished to a tenant leasing space for warehouse or manufacturing use. Generally the lease does not require the tenant to pay for insurance or taxes. Office space in downtown Harrisburg rented for between $2 and $2.95 per square foot in 1965 and between $2.50 and $3.95 per square foot in 1967. This is the most desirable area for offices in Harrisburg. These rates included heat, lighting, air conditioning, and janitorial services, and for the more expensive properties, free parking. The buildings in the immediate vicinity of petitioner's building include a *161 large motor truck sales and service facility and a machine shop. The neighborhood is predominantly industrial. On its Federal income tax returns for the taxable years ending October 31, 1964, October 31, 1965, and October 31, 1966, respectively, petitioner deducted as rent the amount of $19.572. Payments in these amounts were in fact made to the Hugheses or the trust for the benefit of Rosemary Hughes. In his statutory notice of deficiency, respondent determined that the $19,572 rent paid by petitioner to or for the benefit of the Hugheses was excessive rental to the extent of $12,823 per year and in the alternative that "this amount exceeds a reasonable allowance for personal services rendered by its officers." On brief respondent concedes that the fair rental value of the property at 801 South Tenth Street for the years in issue was $10,460 per year, thereby conceding that the excessive portion of the rent as determined by him should have been only $9,112. Opinion The parties agree that petitioner corporation and the Hugheses did not deal at arm's-length in determining the rent to be paid by petitioner and, therefore, petitioner is entitled to deduct as rental or other payment *162 for the use of the property only such amount as represents a fair rental value for the property at 801 South Tenth Street. [1] aff'd per curiam (C.A. 6, 1952), certiorari denied, . Petitioner's expert witness, a real estate broker and appraiser from Harrisburg, gave 431 as his opinion of the fair rental value of the property the amount of $14,432.75 per year as of January 1, 1965 and $16,164.50 per year as of January 1, 1967. Respondent's expert witness, a real estate broker and appraiser from Harrisburg testified that in his opinion the fair rental value of the property was $10,460 per year for each of the years in issue. Both evaluations were based on a rental of the property with the landlord and tenant each bearing the expenses generally borne by each with respect to rental of manufacturing facilities. Petitioner's *163 expert based his evaluation to an appreciable extent on his estimate of the fair rental value of manufacturing facilities for 80 percent of the space and the fair rental value of office space in downtown Harrisburg for 20 percent of the space. Respondent's expert based his opinion of the fair rental value of the property primarily on the rentals being paid for warehouse space in Harrisburg. In our view the fair rental value of the property should be based on the rental value of comparable manufacturing facilities which include adequate office space. Rentals for use as warehouses are generally lower than rental for use ofr manufacturing. Even if a building rented as a warehouse was adaptable for manufacturing operations, generally a new lease would be required for a tenant to be permitted to use the property for manufacturing operations. The office space at petitioner's premises is well appointed and air conditioned but it is not comparable to a downtown office building and is not located in an office building area. Since in our view the fair rental value of the property used by petitioner should be based on the rental value of comparable property leased to be used for manufacturing *164 purposes and the record contains no evidence of reasonably comparable properties rented for such purposes, we have determined the fair rental value by considering all the evidence of record. On the basis of all the evidence we have concluded that the fair rental value of the property for each of the fiscal years 1964 and 1965 is $14,000 and for the fiscal year 1966 is $15,000. Petitioner asserts that services were supplied by Hughes as landlord and that since these services were of a type not usually supplied by a landlord in renting property for manufacturing use, an extra rental should be allowed. Hughes testified that he viewed his services in sweeping the floor, shoveling snow, mowing the lawn and keeping watch over the building to protect it from vandals to be in his role as landlord and not in his role as president and treasurer of petitioner. However, the evidence as a whole shows otherwise. Hughes devoted most of his waking hours to work at petitioner's plant and the record does not support a segregation of his work as part as landlord and part as president and treasurer of petitioner. Petitioner is a small corporation. It is not uncommon for the chief executive of such *165 a corporation to perform menial tasks for the corporation particularly when he and his wife own all the corporate stock. Hughes referred several times in his testimony to himself as petitioner's landlord. However, after May 1, 1965, he had no ownership in the building leased by petitioner, having transferred the building to a trust for the benefit of his wife. Considering the record as a whole, there has been a failure by petitioner to show that Hughes was performing the cleaning and watchman services at the building occupied by petitioner as landlord rather than as an officer of petitioner. Therefore, we do not agree that services not usually performed by a landlord for a tenant were performed for petitioner by its "landlord." Petitioner paid Hughes $20,000 as president and treasurer. It makes no allegation or contention that it should be allowed any part of the rental payment as an extra deduction for salary paid to Hughes as president and treasurer because of any extra duties he performed. Therefore there is no issue before us as to any additional salary deduction by petitioner for payment to Hughes as a corporate officer. Petitioner contends there exists an unusual fire hazard *166 at the plant which should be compensated for by a higher rent. However, there is no evidence in the record of the extent, if any, that this hazard, if in fact there was such a hazard other than those in Hughes' thoughts, would increase the insurance rate on the building over a comparable manufacturing plant without an "unusual" fire hazard. Therefore, petitioner has failed to show whether a landlord dealing at arm's-length with a tenant would demand a higher rental from petitioner than usually charged in the Harrisburg area for manufacturing facilities because of any extra fire hazard. We find no basis in this record to add to the fair rental value of the property an extra amount for an alleged fire hazard. 432 Petitioner contends that in determining a fair rental value of the property leased to petitioner we should consider the rental value of the adjacent lots which petitioner's employees use for parking. The record is clear that the property was not leased to petitioner and that petitioner claimed no deduction for rent for the years in issue for property other than that located at 801 South Tenth Street. Furthermore, the record does not show a need by petitioner for this property *167 for use of its employees for parking. The record shows that there was ample parking available on the streets. We, therefore, hold that petitioner is entitled to deduct as rental for the building at 801 South Tenth Street the amount of $14,000 for each of the fiscal years 1964 and 1965 and $15,000 for its fiscal year 1966. Decision will be entered under Rule 50. Footnotes
1. Sec. 162(A)(3) provides for the deduction as an ordinary and necessary business expense of "(3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property * * *"↩